IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

CASE NO: 17-CR-10113

THE UNITED STATES OF AMERICA,

vs.

PEDRO MEJIA SALAZAR,

_____ /

## DEFENDANT'S SENTENCING MEMORANDUM

COMES NOW, the Defendant, PEDRO MEJIA SALAZAR, and files his sentencing memorandum, advising the Court of all pertinent factors it should consider in fashioning a reasonable and just sentence in his case.

## INTRODUCTION:

This case is before this Court as part of a Rule 11(c)(1)(C) negotiated plea agreement to money laundering that is subject to this Court's acceptance. The agreement between the parties calls for a sentence of between 50 to 60 months. The Defendant, Pedro Mejia Salazar, made the conscious choice to accept responsibility for violating U.S. money laundering laws and as a result is now standing in judgment before this honorable Court. Mr. Mejia is no doubt learning his lesson everyday he spends locked up with hardened criminals away from his family. For reasons more fully developed below, Mr. Mejia requests that the Court accepts the agreement between the parties and sentences him to the lower end of the agreed sentencing range proposed to this Court in his written plea agreement.

## MEMORANDUM:

It is now well established that, as a sentencing court, this Court has wide discretion to vary from the guidelines, which are advisory, and tailor the ultimate sentence imposed in line with the full range of the statutory considerations set forth in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007); *Rita v. United States*, 551 U.S. 338 (2007). A sentence is subject to a reasonableness standard of review. And a sentence produced by application of the guidelines may not be presumed reasonable. *United States v. Nelson*, 129 S.Ct. 890 (2009). *See also, United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006) ("[t]here are … many instances where the Guideline range will not yield a reasonable sentence"). Therefore, sentencing courts are afforded wide latitude in formulating an appropriate sentence for each defendant who appears before the court to be sentenced. *See, Gall*, 552 U.S. 586 (upholding district court's sentence of probation for defendant in conspiracy to traffic ecstasy where the guidelines where 30 to 37 months); *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (upholding district court's application of section 3553(a) factors to fashion a sentence far below the guidelines in the case of a child pornographer); *United States v. Clay*, 438 F.3d 739 (11th Cir. 2007) (upholding a variance to 60 months where the guidelines where 188-235 months of imprisonment); *United States v. Anderson*, 267 Fed. App'x 847 (11th Cir. 2008) (affirming sentence of home confinement where the guidelines where 18 to 24 months of imprisonment and explaining that district courts have wide discretion at sentencing); *United States v. Williams*, 435 F.3d 1350 (11th Cir. 2006) (upholding district court's lengthy variance from guidelines in the case of a career offender); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (upholding a sentence of probation for a tax evader); *United States v.*

- -

*Adelson*, 441 F.Supp.2d 506 (S.D.N.Y. 2006), <u>affirmed</u>, 301 Fed. Appx. 93 (2nd Cir. 2008) (Judge Rakoff varying the defendant's sentence to 42 months in a massive securities fraud case where his applicable guidelines exceeded the maximum sentence of 85 years for the offenses of conviction).

The mandate of section 3553(a) is, of course, for the Court to "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in the second paragraph of that same statute. In *Rita v. United States*, 551 U.S. 338, 347 (U.S. 2007), the U.S. Supreme Court summarized the now often-cited factors found in that second paragraph: (1) the offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. The statute's 'factors' as they apply to Mr. Mejia are discussed and analyzed below.

### *Offense Conduct*

As the PSIR tells it, Mr. Mejia was involved in money laundering through his participation in the black-market peso exchange. This activity involved receiving and redirecting wired money and currency swaps thru several countries including the United States. As a result, he violated United States money laundering and banking laws subjecting him potentially to extradition from Colombia. Prior to becoming aware that he was being targeted for indictment and extradition to the United States, Mr. Mejia and several of and his family

- -

members were sanctioned by United States Treasury Department by being placed on the OFAC list. Subsequently, Mr. Mejia engaged in a dialogue with representatives of United States Department of Justice and agreed to voluntarily appear before this Court to accept responsibility for his conduct.

### *Personal History*

As the PSIR indicates, Mr. Mejia comes from extremely humble origins. He has no formal education and worked most of his life as a farmer. Through hard work and perseverance, he managed to raise his family during some of the darkest years of Colombia's war with the Medellin Drug cartel and its infamous leader Pablo Escobar. Nonetheless, Mr. Mejia survived by providing an ancillary service to this horrible industry. He does not regard himself or his family as victims but rather as survivors. This is not to say that he feels justified in having committed the crimes that he is now ready to pay for. He fully understands that his role as a money broker and launderer fueled the engine that kept the drug trade flowing during those tumultuous years and continues today. For this he is truly remorseful and prepared to accept his punishment and the judgment of this court.

### *The need for the sentence to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment:*

These considerations overlap to some extent with the nature and circumstances of the offense. There is no doubt that Mr. Mejia's misconduct is a serious crime and his participation in this case is a vital link in a chain of events that culminates in the overall crime of drug trafficking. While there is no disputing that money laundering is a serious crime in and of itself,

- -

Mr. Mejia's involvement did not involve any violence, use of violence, or threats of violence. Rather, whenever a money contract being handled by Mr. Mejia was seized or somehow lost, he and his family were held responsible by the owners of the funds and had to pay back the money by whatever means necessary. Some of these individuals involved hit men from the notoriously violent *Oficina de Envigado* criminal syndicate based in Medellin, Colombia.

The *Oficina de Envigado* specializes in collecting debts on behalf of the criminal underworld. It employs a vast number of hit men and enforcers whose duty it is to force debtors to pay their debts by any means necessary. This can include signing over property such as real estate, vehicles, or even valuable horses or live stock or other receivables. Sometimes debts are paid off by performing unpaid work for the syndicate or for the owner of the debt. If the debtor refuses or is unable to pay the debt, family members are kidnapped and tortured to force payment of the debt.

On at least two occasions, Mr. Mejia and his family had to pay debts associated with funds that were seized or stolen in transit. These economic losses together with being sanctioned on the OFAC list left the family with very limited financial resources and has inhibited their ability to gain or maintain stable employment. Whatever material wealth they may have once had is long gone. Another consequence has been the loss and prohibition of having U.S. tourist visas. This means that throughout Mr. Mejia's entire incarceration he will not receive a single visit from one of his family members. This has truly been a humbling experience.

***Deterrence and the need to protect the public from Mr. Mejia:***

There are, of course, two kinds of deterrence. There is the need to deter Mr. Mejia from reoffending, especially committing a crime that may include money laundering, and there is the

- -

need to deter others from doing what he did here.  And there is the need to protect the public

from Mr. Mejia, which would appear to be tied directly to the need to deter him from engaging

in criminal conduct again and incapacitating him from committing crimes.

It is will settled that rates of recidivism among elderly offenders is extremely low.

Numerous studies and reports issued by the United States Sentencing Commission and other

bodies of authorities support the argument that a long prison sentence will not protect the public

from Mr. Mejia who is 74 years old any more than a sentence of 50 months should suffice. [1]  As

for general deterrence, it hard to see how imprisoning Mr. Mejia beyond 50 months will deter

other individuals.  Black market money exchanges have existed since the beginning of the use of

coined or printed currency. Individuals sitting in countries halfway around the world often know

no other way to transact than through this system.  For many the use of the BMPE is the only

way of transacting for goods and services. In the specific case of individuals engaging in large

volume transactions that are somehow related to drug trafficking, it's hard to see how

imprisoning Mr. Mejia for more than 50 months is going to somehow drive home the message

that they too can be faced with a stiff sentence.  As the PSIR points out, Mr. Mejia stands all of

---

[1] Department of Justice statistics show that prisoners 55 or older recidivate at a rate of just 2 percent. (Timothy A. Hughes et al., Trends in State Parole, 1999–2000, Bureau Just. Stat. Special Rep. (Oct. 2001), http://www.bjs.gov/ content/pub/pdf/tsp00.pdf.) Other studies have indicated that there is virtually no recidivism for individuals age 60 or older. (See, e.g., Kyung Yon Jhi & Hee-Jong Joo, Predictors of Recidivism Across Major Age Groups of Parolees in Texas, Just. Pol'y J., Spring 2009.) *See also* Roger Warren, National Center for State Courts, Evidence-Based Practice to Recidivism: Implications for State Judiciaries (2007), available at: http://ncic.gov/library/files/023358.pdf ("The research evidence is unequivocal that incarceration does not reduce offender recidivism") and Francis T. Cullen, Cherly Lero Johnson & Daniel S. Nagin, Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science, 91 Prison J. 48s, 60s (2011) (Reviewing the research and evidence on the question of the impact of imprisonment on recidivism, and stating that, "[w]ith some confidence, we can conclude that, across all offenders, prisons do not have a specific deterrent effect.

- -

five feet, three inches tall and weighs a mere 164 pounds. A long prison stint will only expose him to the inherent dangers of prison life and abuse from other inmates. In short, 'general deterrence,' a concept which too many courts and prosecutors appear to emphasize more than other sentencing factors, simply fails to mitigate against a low-end sentence in the case of Mr. Mejia.

### The need to provide the defendant needed medical care, or other correctional treatment in the most effective manner.

It's well documented in the PSIR and the accompanying medical records that Mr. Mejia suffers from numerous ailments. Of these, chronic lifelong asthma, type two diabetes and the absence of one kidney pose the most serious threats to him during a prolonged incarceration. He is currently receiving six or more medications daily including nebulizers, inhalers and is on a special diet to control his cholesterol and diabetes. Since his arrival in the District of Massachusetts he has had at least one bronchitis attack requiring him to receive treatment with a nebulizer. As a result of his delicate health condition, he is requesting that his incarceration be at a facility with a hospital like FMC Devens or FMC Butner.

### The Recommended guideline:

The parties have jointly recommended a sentence of between 50 to 60 months for the Court's consideration under a Rule 11(c)(1)(C) plea agreement. If the Court is willing to accept this plea agreement, Mr. Mejia respectfully requests that he receive a sentence at the low end of the recommendation and be sentenced to 50 months. If the Court should reject the plea agreement then the recommended guideline level as calculated by the PSIR is a level 29 after acceptance of responsibility. In such a case, Mr. Mejia would ask the Court to apply "Safety

- -

Valve" relief as it is available under Title 18 U.S.C. 3553(f). Furthermore, Mr. Mejia would ask the Court for a variance or downward departure based on his advanced age and poor health. Hopefully his pleas for mercy will not be necessary as he has faith that this merciful Court will honor the agreement made with the United States Attorney's Office.

### *The sentence should not be greater than necessary to meet the goals of the statute:*

Finally, the instruction that a sentence "be sufficient, but not greater than necessary" to achieve the goals set forth in section 3553(a) include the principles of mercy and compassion. Here, Mr. Mejia, through his counsel, prays that the Court temper its sentence with some mercy and compassion. They too have a place at the table at sentencing. Even before Booker returned sentencing authority back to the courts, there were Judges who recognized that mercy and compassion should be considered in sentencing those persons who have transgressed our laws and norms. One of those Judges, United States District Court Judge Jack Weinstein, wrote the following:

> Mercy is seldom included on the list of "traditional" rationales for sentencing. It is, however, evinced by the federal sentencing statute, 18 U.S.C. §3553(a), which provides,...that the lowest possible penalty consistent with the goals of sentencing be imposed. See also United States v. Johnson, 964 F.2d 124, 125 (2nd Cir. 1992) ("the United States Sentencing Guidelines do not require a judge to leave compassion and common sense at the door to the courtroom"). The notion that undue harshness should be avoided by those sitting in judgment has long been a part of the human fabric and spirit. Lenity is often the desirable route.

*United States v. Blarek*, 7 F.Supp.2d 192, 210 (E.D.N.Y. 1998) (J. Weinstein).

- -

## CONCLUSION:

In sum, while some punishment may be necessary, a lengthy sentence of imprisonment is not. A sentence of more than 50 months in prison in this matter serves only punitive purposes and is unhinged from the other goals of the sentencing statute. Indeed, if the only relevant goals in sentencing were the twin goals of retribution and punishment, a guideline sentence here would still be extremely disproportionate to the wrong committed by Mr. Mejia. It is so disproportionate that it undermines the notion that the law should be fair and just. The guidelines are advisory and this Court has discretion to vary from them in sentencing the defendant. In this particular case, the Court has the option of accepting the parties' recommended sentencing range and apply the low end of 50 months.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 22, 2017 the foregoing was filed with the Clerk of Court and copy furnished to the United States Attorney's Office for the District of Massachusetts vie CM/ECF.

Respectfully submitted,

**Horstman & Alfaro PLLC**
4000 Ponce de Leon Blvd. Suite 470
Coral Gables, Florida 33146
Tel: 786-363-2517
Fax: 305-777-044
Email: nelson@horstmanalfaro.com

By:/S/ Nelson I. Alfaro
Nelson I. Alfaro
Fla. Bar No. 023963

- -